IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02837-MEH

DAVID SENA,

    Plaintiff,

v.

ADAMS COUNTY,
ADAMS COUNTY SHERIFF'S OFFICE, and
TYLER BENJAMIN,

    Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendants' Motion to Dismiss. ECF No. 23. In this lawsuit, Plaintiff asserts one claim under 42 U.S.C. § 1983 for a violation of his Fourth Amendment rights. Defendants argue the Complaint should be dismissed, because Plaintiff does not state a claim against the entity Defendants and Deputy Tyler Benjamin ("Benjamin") is entitled to qualified immunity. The Court heard the motion on July 10, 2019 and has reviewed the briefs and operative pleading. For the reasons that follow, the Court will grant in part and deny in part the motion.

## STATEMENT OF FACTS

    The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in the Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    On November 18, 2016, Plaintiff was driving a pickup truck that was pulling a flatbed trailer heading southbound on Brighton Road in Commerce City, which is located in Adams

County, Colorado. ECF No. 1 ¶ 12. Deputy Benjamin saw the vehicle and decided to "check[] the license plate" on the trailer, which revealed that it did not have a DMV record. *Id.* ¶ 13. He initiated a traffic stop, and Plaintiff pulled over into a parking lot. *Id.* ¶¶ 13-14. Plaintiff was otherwise obeying all traffic laws. *Id.* ¶ 13.

After stopping, Plaintiff exited his vehicle. *Id.* ¶ 15. Benjamin instructed Plaintiff to get back in the truck, but Plaintiff discovered he had locked himself out. *Id.* Benjamin then directed Plaintiff to turn around and put his hands behind his back, and Plaintiff complied. *Id.* ¶ 16. As Benjamin approached Plaintiff, he noticed that Plaintiff had a pocketknife clipped to his pants, and Benjamin took Plaintiff to the ground. *Id.* ¶ 17. He then struck Plaintiff in the face multiple times. *Id.* ¶ 18. Plaintiff suffered a broken jaw, retinal detachment, and a traumatic brain injury as a result of the blows to his face. *Id.* ¶ 22. After these events, "officers" noticed that a butterfly knife was sitting in plain view in Plaintiff's truck. *Id.* ¶ 19. "Officers" broke a window to get into the truck and towed the vehicle. *Id.*

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."

*Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

3

**DISCUSSION**

Defendants first argue that Adams County and the Adams County Sheriff's Office should be dismissed, because Plaintiff fails to state a claim against any entity Defendant under § 1983.[1] Defendants also contend that Benjamin should be dismissed, because he is entitled to qualified immunity. The Court will address each argument as presented.

**I.     Adams County & Adams County Sheriff's Office**

Defendants argue that Plaintiff does not plausibly state a claim against either of the entity Defendants, because he fails to allege that they caused Plaintiff's injury under § 1983. The Supreme Court has determined that "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "But, under § 1983, local governments are responsible only for 'their own illegal acts.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 563 U.S. at 61 (quoting *Monell*, 436 U.S. at 691).

To support his argument that he has validly stated a claim against each entity, Plaintiff relies on a single allegation in the Complaint. Plaintiff alleges each entity was "responsible for the oversight, supervision and training" of Benjamin. ECF No. 1 ¶¶ 5-6. This allegation is insufficient to state a Section 1983 claim against the entities. "[T]here are limited circumstances

---

[1] The parties dispute whether each entity is properly named in this case. The Court finds it unnecessary to reach this question, because Plaintiff does not plausibly state a claim against either entity.

4

in which an allegation of a 'failure to train' can be the basis for [municipal] liability under § 1983." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 773 (10th Cir. 2013) (quoting *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton*, 489 U.S. at 389).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). Therefore, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Then "[t]he city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61-62 (quoting *City of Canton*, 489 U.S. at 395). Still, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

Plaintiff's allegation that each entity was "responsible for the oversight, supervision, and training" of Benjamin is insufficient to state a Section 1983 claim against the entity. Critically, it is devoid of any allegation that Adams County had actual or constructive notice of a deficiency in its training program that led to the alleged constitutional violation of its citizens' rights. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("[A] plaintiff must 'identify a specific deficiency'

5

that was obvious and 'closely related' to his injury so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury[.]" (citation omitted)); *Estate of Reat v. Rodriguez*, No. 12-cv-02531-REB-MEH, 2014 WL 4358333, at *2 (D. Colo. Sept. 3, 2014) (dismissing a claim where the plaintiffs failed to allege "city policymakers [were] on actual or constructive notice that a particular omission in their training program caused city employees to violate citizens' constitutional rights"). Therefore, Plaintiff fails to state a plausible Section 1983 claim against Adams County and the Court will grant the Motion to Dismiss the entity Defendants.

## II. Deputy Benjamin

Benjamin also seeks dismissal, asserting he is entitled to qualified immunity from liability for Plaintiff's claim. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Overcoming qualified immunity presents a "heavy burden." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the

6

circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

      A.      <u>Violation of a Constitutional Right</u>

To overcome qualified immunity, Plaintiff must establish a violation of his Fourth Amendment right. "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To determine whether the force used in a particular case is excessive 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (quoting *Graham*, 490 U.S. at 396). "In conducting this inquiry, [a court] consider[s] the totality of the circumstances, including . . . 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Walker v. City of Orem*, 451 F.3d 1139, 1159 (10th Cir. 2006) (quoting *Graham*, 490 U.S. at 396). But this analysis also must "be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions." *Medina*, 252 F.3d at 1131 (quoting *Graham*, 490 U.S. at 396-97). "[E]ven '[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed.'" *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (first alteration added) (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)).

In this case, the *Walker* factors suggest Plaintiff plausibly alleges Benjamin used excessive force. First, the severity of the offense at issue pertains to a routine traffic violation. Benjamin initiated a vehicle stop after he could not locate a DMV record for Plaintiff's trailer. *See Casey*, 509 F.3d at 1283 (noting force was excessive given the "triviality" of the purported offense). Plaintiff alleges that, otherwise, he was obeying all traffic laws, and Defendants concede the stop began as "benign." ECF No. 29 at 5. Further, at the time of the use of force, the allegations reflect that Benjamin had no information about the butterfly knife located in Plaintiff's vehicle.

In assessing the second *Walker* factor – the degree of a threat facing an officer -- relevant factors include:

> (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect.

*Murr*, 511 F.3d at 1260. Consideration of these factors as applied to the allegations, taken as true, also suggest the force was excessive. According to the Complaint, Benjamin did not order Plaintiff to drop the pocketknife, and Plaintiff complied with Benjamin's orders to put his hands behind his back. Most importantly, Plaintiff does not allege he made any threatening action with the knife or any movement to reach it with his hands. *See Jiron*, 392 F.3d at 412-13, 417 (finding a plaintiff who turned a six- to ten-inch knife towards a police officer and "hack[ed] it in the air" put the officer in imminent fear of serious bodily harm). Additionally, the totality of the allegations in the Complaint suggest Plaintiff's manifest intentions were to comply with Benjamin's directives during the encounter.

Finally, the allegations in the Complaint state Plaintiff was not in any way resisting arrest or attempting to flee. Nevertheless, he alleges Benjamin took him to the ground and struck him in the face several times. As a result, he states he suffered a broken jaw, retinal detachment, and

8

traumatic brain injury. The Court finds Plaintiff has plausibly alleged Benjamin's use of force was excessive and violated his Fourth Amendment rights.

  B. <u>Clearly Established Law</u>

  The second element of qualified immunity requires Plaintiff to show that his right against excessive force under the circumstances alleged is supported by clearly established law. *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015). The Tenth Circuit has unambiguously emphasized that it is a plaintiff's burden to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity."); *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (finding that, although the plaintiff "might well have been able to satisfy us that Defendants' actions violated his clearly established rights," the plaintiff "through his counsel, [has simply] failed to carry the burden assigned to him by law."); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) ("[The plaintiff], through his counsel, failed to carry the burden assigned him by law."). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283-84 (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must support the position. *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir.), *cert. denied sub nom.*, *I.B. v. Woodard*, — U.S. —, 139 S. Ct. 2616 (2019); *Quinn*, 780 F.3d at 1005.

Historically, the Tenth Circuit has stated that in the Fourth Amendment context, "because excessive force jurisprudence requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case, there will almost never be a previously published opinion involving exactly the same circumstances." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Casey*, 509 F.3d at 1284). Therefore, "[a court] cannot find qualified immunity whenever [it] find[s] a new fact pattern." *Id.* (quoting *Casey*, 509 F.3d at 1284). In other words, the court concluded that the facts need not be precisely analogous for the purpose of determining whether relevant law was clearly established.

But, recent decisions by the Supreme Court have emphasized the importance of finding analogous factual circumstances when determining whether relevant law was clearly established. In *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148, 1152 (2018), the Court stated "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." The Court ruled that "[u]se of excessive force is an area of the law 'in which the result depends very much on the *facts of each case* . . . .'" *Id.* at 1153 (emphasis added) (quoting *Mullenix v. Luna*, — U.S. —, 136 S. Ct. 305, 309 (2015)). The Court concluded that "police officers are entitled to qualified immunity unless existing precedent '*squarely governs*' the specific facts at issue." *Id.* (emphasis added) (quoting *Mullenix*, 136 S. Ct. at 309). Absent a showing of an analogous circumstance, the Supreme Court has stated that only in a "rare obvious case" will an officer's unlawful actions be sufficiently clear to overcome qualified immunity. *City of Escondido, v. Emmons*, — U.S. —, 139 S. Ct. 500, 504 (2019).

To support his argument that Benjamin's use of force violated clearly established law, Plaintiff cites to four cases, all unpublished decisions of this District. First, he cites to *Lee v. Tucker*, No. 16-cv-01569-NYW, 2017 WL 2839650 (D. Colo. July 3, 2017). However, *Lee* cannot support Plaintiff's position, because it was decided on July 3, 2017, and the alleged events in this case occurred on November 18, 2016. ECF No. 1 ¶ 12. Similarly, *Mwangi v. Norman*, No. 16-cv-00002-CMA-NYW, 2016 WL 7223270 (D. Colo. Dec. 13, 2016) was decided after the events in this case and cannot support a conclusion that Benjamin's action violated clearly established law at the time.

Plaintiff also cites to *Simmons v. Hinton*, No. 13-cv-2566-CMA-MJW, 2015 WL 1041583 (D. Colo. Mar. 5, 2015) and *Carbajal v. Morrissey*, No. 12-cv-03231-REB-KLM, 2014 WL 1301532 (D. Colo. Mar. 31, 2014), but these cases are unpublished district court decisions and do little to show the necessary law was clearly established. *See Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012) ("[A] a single unpublished district court opinion is not sufficient to render the law clearly established."). Unpublished decisions "provide[] little support for the notion that the law is clearly established on [a given] point." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007). Moreover, the cases do not address similar factual circumstances.[2] At the hearing, Plaintiff essentially rested on the arguments made and cases cited in his response brief.

Despite Plaintiff's failure to identify a factually analogous on-point Supreme Court or Tenth Circuit opinion supporting an argument that his right against excessive force under the circumstances of this case was clearly established, the Court determines that, for purposes of a motion to dismiss, this is the "rare obvious case" in which the allegations in Plaintiff's Complaint,

---

[2] In fact, the Court has reviewed all Supreme Court and Tenth Circuit cases cited by Plaintiff in his response brief and found none that are analogous to the circumstances presented here.

taken as true, so clearly establish a constitutional violation that he overcomes Deputy Benjamin's qualified immunity. The Court finds support for this result in the Tenth Circuit's decision in *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018). In that case, the court determined that several officers' conduct in which they continued to strike a suspect who had already been subdued and restrained was so clearly a violation of the Fourth Amendment that the defendant was not entitled to qualified immunity. *Id.* at 1052-53.

Similar to *McCoy*, Plaintiff alleges that, after the traffic stop, he complied with Benjamin's instructions to turn around and put his hands behind his back and, thus, he was subdued. Benjamin then took Plaintiff to the ground and struck him in the face multiple times, such that Plaintiff suffered a broken jaw, retinal detachment, and traumatic brain injury. Notably, the Tenth Circuit has established that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Casey*, 509 F.3d at 1185. Accordingly, despite Plaintiff's failure to identify an appropriate case in factually analogous circumstances, the Court concludes that Deputy Benjamin's alleged conduct is so clearly unlawful that he is not entitled to qualified immunity at this early stage of the litigation.

## **CONCLUSION**

Taking as true the facts alleged in Plaintiff's Complaint, the Court finds Defendant Benjamin is not entitled to qualified immunity from liability for Plaintiff's Section 1983 excessive force claim. However, the Court concludes that Plaintiff fails to plausibly state the claim against the entity Defendants and dismisses them from this case.

Therefore, Defendant's Motion to Dismiss [filed January 25, 2019; ECF No. 23] is **granted in part** and **denied in part**. The Clerk of the Court is directed to dismiss Defendants Adams

12

County and Adams County Sheriff's Office from this case.  In addition, the stay in this case is **lifted**.

Dated at Denver, Colorado this 19th day of July, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge